UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAR 2 4 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| EQUIVEST, LLC., an Illinois Limited Liability Company, | ) ) ) |
| Plaintiff, | ) ) |
| V. | ) No. 04 C 1308 ) |
| THE VILLAGE OF BRIDGEVIEW, an Illinois Municipal Corporation, STEVEN M. LANDEK, WAYNE F. GRABINSKI, NORMA J. PINION, JAMES A. CECOTT and MICHAEL J. PTICEK, | ) ) Judge Nordberg ) ) Magistrate Judge Levin ) |
| Defendants. | ) |

## NOTICE OF MOTION

To:  MICHAEL G. CAINKAR
     LOUIS F. CAINKAR
     30 N. LaSalle Street - #3922
     Chicago, IL 60602-2507

        PLEASE TAKE NOTICE that on April 22 2004 at 2:30 p.m., I will appear before Judge Nordberg, Room 1801, 219 S. Dearborn, Chicago, Illinois and then and there present PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION and MEMORANDUM IN SUPPORT THEREOF, copies of which are herewith served upon you.

_____
WAYNE B. GIAMPIETRO
Attorney for Plaintiff

Stitt, Klein, Daday, Aretos & Giampietro
121 S. Wilke, Suite 500
Arlington Heights, Illinois 60005
847-590-8700

## CERTIFICATE OF SERVICE

I served the foregoing Notice of Motion and memorandum thereof upon counsel listed above by United States Mail on the 24th day of March, 2004 with proper prepaid postage affixed.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

*FILED*

MAR 2 4 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

EQUIVEST, LLC., an Illinois )
Limited Liability Company, )
 )
        Plaintiff, )
 )
        V. ) No. 04 C 1308
 )
THE VILLAGE OF BRIDGEVIEW, an Illinois )
Municipal Corporation, STEVEN M. LANDEK, ) Judge Nordberg
WAYNE F. GRABINSKI, NORMA J. PINION, )
JAMES A. CECOTT and MICHAEL J. PTICEK, ) Magistrate Judge Levin
 )
        Defendants. )

## MOTION FOR PRELIMINARY INJUNCTION

      Plaintiff EquiVest, LLC files this Motion for Preliminary Injunction, pursuant to Fed. R.

Civ. P. 65. EquiVest asks this Court to enter a preliminary injunction compelling the Village of

Bridgeview to issue a special use permit for the operation of an adult business at 7421 W. 100th

Place, Bridgeview, Illinois, pending the determination of this case.

### FACTS

1.     EquiVest has filed a verified Complaint challenging certain provisions of the Zoning

      Ordinances of the Village of Bridgeview, both on their face and as applied to Plaintiff.

2.     Plaintiff wishes to operate an adult business on the premises located at 7421 W. 100th

      Place, Bridgeview, Illinois, which premises are located within a zoning district which

      allows the operation of such businesses under the Ordinances of the Village of

      Bridgeview.

3.     Plaintiff has made the appropriate application to the Village of Bridgeview for a special

      use permit to operate an adult book, video and apparel store and an adult entertainment

      cabaret, which are classified as Adult Uses pursuant to Section 14 of the Village of

      Bridgeview Zoning Ordinance, and a restaurant on the premises. The Village of

Bridgeview Planning and Zoning Commission recommended that the special use permit sought by Plaintiff be granted.

4.  On February 18, 2004, the Board of Trustees of the Village of Bridgeview denied the special use permit sought by Plaintiff. The reasons publicly stated by defendants in voting to deny that special use permit are set forth in the transcript of the meeting of the Board of Trustees, a copy of which transcript is attached hereto as Exhibit "A."

5.  A review of that transcript demonstrates that the reasons cited by defendants for the denial of that special use permit was because defendants disagreed with the kind of speech which they thought Plaintiff was going to engage in on the premises if the special use permit were granted. The reasons given for the denial of that special use permit are based upon the content of the speech in which Plaintiff seeks to engage and have no legitimate governmental interest behind them.

6.  The speech in which Plaintiff seeks to engage is protected by the First Amendment to the United States Constitution.

7.  The Zoning ordinances of the Village of Bridgeview constitute a prior restraint on freedom of expression.

8.  The Zoning ordinances of the Village of Bridgeview grant the Trustees of the Village unbridled discretion in deciding whether to issue a special use permit for an adult business such as that sought by Plaintiff. In exercising that unbridled discretion, the defendant Village Trustees have violated Plaintiff's rights under the First Amendment by basing their refusal to grant a special use permit on reasons which do not constitute a legitimate governmental interest.

9.  The Zoning Ordinances of the Village of Bridgeview do not provide Plaintiff with access to prompt judicial review, and indeed provide Plaintiff with no judicial review at all.

## REASONS FOR THE INJUNCTION

1.    Plaintiff has a clear legal right to conduct an adult business at the location for which a permit is sought.

2.    Plaintiff's rights are being abridged by the denial of a special use permit for the operation of an adult business.

3.    Plaintiff has no adequate remedy at law.

4.    Plaintiff will suffer an irreparable injury if the Court does not issue a preliminary injunction. As a matter of law, the loss of rights protected by the First Amendment, even for a brief period of time, constitutes irreparable injury for purposes of injunctive relief.

5.    The harm which Plaintiff will suffer if the Court denies injunctive relief outweighs any conceivable harm the Defendants would suffer if the injunction is issued.

6.    A preliminary injunction will not disserve the public interest.

## REQUIREMENT FOR A BOND

7.    Fed. R. Civ. P. 65(c) requires that a bond be posted as a condition of a preliminary injunction.

8.    There are no costs which the Village of Bridgeview will suffer from the issuance of the preliminary injunction sought by Plaintiff. The only substantial costs involved are attorney fees, and pursuant to 42 U.S.C. § 1988 the Defendants cannot recover their attorney fees unless they show that Plaintiff's lawsuit is frivolous.

9.    The Court should exercise its discretion and require that Plaintiff post only a nominal bond.

3

WHEREFORE, EQUIVEST, LLC urges this Court to enter a preliminary injunction, compelling the Village of Bridgeview to issue a special use permit to Plaintiff to operate an adult book, video and apparel store and an adult entertainment cabaret and a restaurant, as prayed for in the Complaint.

_____
Wayne B. Giampietro

Wayne B. Giampietro, Bar No.0947776
Stephen G. Daday, Bar No 3127015
Michael G. Aretos, Bar No.6200044

Of Counsel:

Stitt, Klein, Daday, Aretos & Giampietro
121 S. Wilke Road, Suite 500
Arlington Heights, IL 60005
(847) 590-8700
(847) 590-9825 fax

Attorneys for Plaintiff EQUIVEST, LLC

4

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAR 2 4 2004

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| EQUIVEST, LLC., an Illinois Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) ) | |
| V. | ) ) | No. 04 C 1308 |
| THE VILLAGE OF BRIDGEVIEW, an Illinois Municipal Corporation, STEVEN M. LANDEK, WAYNE F. GRABINSKI, NORMA J. PINION, JAMES A. CECOTT and MICHAEL J. PTICEK, | ) ) ) ) ) | Judge Nordberg |
| | | Magistrate Judge Levin |
| Defendants. | ) ) | |

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

Plaintiff has filed the instant lawsuit, challenging the constitutionality, both facially and as applied, of the Village of Bridgeview's Zoning Ordinances which Plaintiff alleges operate as a prior restraint on free speech and outside the permissible scope of zoning of adult businesses. This matter is before the Court pursuant to Plaintiff's Motion for Preliminary Injunction, seeking to enjoin the enforcement of the Bridgeview Zoning Ordinance as to Plaintiff.

### FACTS

Plaintiff owns the property located at 7421 West 100th Place in Bridgeview, Illinois. This property is within a zoning district which the Village of Bridgeview has designated as one in which an adult business may be operated. Location within a permissible district, however, is not sufficient. Bridgeview also requires that an entity seeking to operate such a business must also obtain a special use permit for the operation of that specific business.

On January 13, 2004, Plaintiff applied for such a special use permit to "operate an adult

book, video and apparel store and an adult entertainment cabaret, which are classified as Adult Uses pursuant to Section 14 of the Village of Bridgeview Zoning Ordinance, and a restaurant." A public hearing on that application was held, after which the Bridgeview Planning and Zoning Commission recommended that a special use permit be granted to Plaintiff for the business it sought. The matter was then heard by the Board of Trustees of the Village of Bridgeview. Rejecting the recommendation of the Planning and Zoning Commission, the Village Board denied the permit. A full transcript of the proceedings of the Village Board on that issue is attached to this Memorandum as Exhibit "A." A review of that transcript shows that there were no constitutionally permissible reasons given for the denial of the permit sought by Plaintiff.

The Trustees specifically based their denial of that permit on the content of the speech they thought Plaintiff would offer in its proposed business. They simply don't want "that kind" of business in their town.

## ARGUMENT

The ordinance allowing such action is unconstitutional on its face. The use of that ordinance by the Village of Bridgeview to suppress this Plaintiff's free speech rights is an unconstitutional application of the power granted to them. There is no constitutionally valid reason to deny Plaintiff the ability to operate the business it seeks at the location owned by Plaintiff. Plaintiff is entitled to this Court's immediate assistance in allowing it to exercise its constitutionally protected rights to engage in speech which is itself protected by the First Amendment.

2

## I. STANDARD FOR ISSUANCE OF A PRELIMINARY INJUNCTION

In determining the propriety of issuing injunctive relief, this Court must weigh the following four factors:

(a)     the danger that the party seeking the injunction will suffer irreparable injury if the injunction is not issued;

(b)     the risk that the party seeking the injunction will be harmed more by the absence of an injunction than the opposing party would by the granting of the relief;

(©)     the likelihood that the party seeking the injunction will prevail on the merits; and

(d)     the harm to the public interest if the injunction is issued.

Where irreparable harm is established, and the balance of harm tips in favor of the Plaintiff, there is a consequent lowering of the threshold to establish a substantial likelihood of success on the merits. See, e.g., Direx Israel, Ltd. v Breakthrough Medical Corp., 952 F2d 802, 811-14 (4th Cir. 1992); Containers, Ltd. v Stena, 890 F2d 1205, 1208 (D.C. Cir. 1989); Kowalski v Chicago Tribune Co., 854 F2d 168, 170 (7th Cir., 1988); Frisch's Restaurant, Inc. v Shoney's, Inc., 759 F2d 1261-1270 (6th Cir., 1985); and Anthony v Texaco, Inc., 803 F2d 593, 599 (10th Cir., 1986).

Once the movant meets his initial burden, "the inquiry become[s] a 'sliding scale' analysis of the harm to the parties and the public from the grant or denial of the injunction and the actual likelihood of success on the merits." *Kellas v. Lane*, 923 F.2d 492, 493 (7th Cir. 1990). Recently the Court of Appeals discussed the preliminary injunction test in *Ayres v. City of Chicago* 125 F 3d 1010 (7th Cir 1997):

> [T]he court asked to grant such relief discounts (that is, multiplies) the harm to the plaintiff if it is withheld by the probability that in the end the plaintiff will prevail in the suit, and compares that discounted harm to the

> discounted harm to the defendant from granting the relief to the plaintiff. *Vencor, Inc. v. Webb*, 38 F.3d 840, 845 (7th Cir. 1994); *Curtis 1000, Inc. v. Suess*, 24 F.3d 941, 945 (7th Cir. 1994); *American Hospital Supply Corp. v. Hospital Products Ltd.*, 780 F.2d 589, 593-94 (7th Cir. 1986); *Self-Realization Fellowship Church v. Ananda Church of Self-Realization*, 59 F.3d 902, 913 (9th Cir. 1995). If the plaintiff has a very high probability of prevailing, the discount factor will be small, and if he can then show that he will be seriously and irreparably harmed unless he obtains preliminary relief, the injunction will probably be granted. But even a plaintiff who does not have a very high probability of ultimately prevailing will be entitled to preliminary relief if he faces very great irreparable harm and the defendant very little (unless third parties would be hurt) . . . .

The harm which Plaintiff will suffer without issuance of a preliminary injunction here will be great. The harm to Bridgeview and the public if that injunction is issued is non-existent.

## II. PLAINTIFF IS THREATENED WITH IRREPARABLE INJURY FOR WHICH IT HAS NO ADEQUATE REMEDY AT LAW

The deprivation of rights guaranteed under the First Amendment constitutes an irreparable injury as a matter of law. Interference with those rights, for even a short period of time, is an irreparable constitutional injury. *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673 (1976). Since Plaintiff is being deprived of the right to speak, irreparable injury is presumed.

The First Amendment, through the application of the Fourteenth Amendment, guarantees and protects fundamental rights of free expression from state suppression.

> It is a fundamental precept of the First Amendment to the United States Constitution that all expression, whether it is written, pictorial, or by way of performance, is presumptively protected against governmental interference and restraint.

Ellwest v Boner, 718 F. Supp 1553, at 1560, citing Doron v Salem, Inc., 422 U.S. 933-934; 95 S.Ct. 2561; 45 L.Ed.2d. 648 (1975); Roaden v Kentucky, 413 U.S. 496, 93 S.Ct. 2796; 37 L.Ed.2d. 757 (1973); and Schad v Borough of Mount Ephraim, 452 U.S. 61, 66; 101 S.Ct. 2176; 68 L.Ed.2d. 671 (1981).

If this Court declines to enter preliminary injunctive relief and this Plaintiff is ultimately victorious on the merits in regard to the unconstitutionality of these ordinances, it will have been deprived of its fundamental constitutional rights for which no subsequent award or monetary compensation can make it whole. Therefore, it is beyond question that irreparable harm is shown in the circumstances here and Plaintiff has met its second test for determining the propriety of issuing injunctive relief.

## III. THERE IS A LIKELIHOOD THAT PLAINTIFF WILL PREVAIL ON THE MERITS OF ITS CLAIMS.

A regulatory scheme that allows the exercise of First Amendment rights in a public forum only after a permit is obtained effects a prior restraint of those rights. *See Forsyth Co. v. Nationalist Movement*, 505 U.S. 123, 131, 112 S.Ct. 2395, 120 L.Ed.2d 101 (1992); *Service Employees Intern. Union, AFL-CIO v. Port Authority of N.Y. and N.J.*, 3 F.Supp.2d 413, 420 (S.D. N.Y. 1998). A content-based regulation is valid only if there is some reasonable opportunity to disseminate the speech in which one seeks to engage. *Schultz v City of Cumberland*, 228 F. 3d 831 (7th Cir. 2000).

Whenever one is required to obtain a permit from the government in order to engage in political speech, the permitting scheme is a prior restraint on activities protected by the First Amendment. In the case of any prior restraint on free speech, the ordinance is presumed to be unconstitutional; in such cases, the government bears a heavy burden to demonstrate that the restriction is valid. *Bantam Books v. Sullivan*, 372 U.S. 58, 83 S.Ct. 631 (1963).

Whenever the government imposes a prior restraint on free speech, it must avoid giving its employees the discretion to stifle or suppress that speech. In *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 110 S.Ct. 596 (1990) the Court wrote:

. . . [A] scheme that places "unbridled discretion in the hands of a government official or agency constitutes a prior restraint [493 U.S. 226] and may result in censorship." *Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 757, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988). *See Saia v. New York*, 334 U.S. 558, 68 S.Ct. 1148, 92 L.Ed. 1574 (1948); *Niemotko v. Maryland*, 340 U.S. 268, 71 S.Ct. 328, 95 L.Ed. 280 (1951); *Kunz v. New York*, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); *Staub v. City of Baxley*, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *Freedman v. Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965); *Cox v. Louisiana*, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); *Shuttlesworth v. Birmingham, supra*; *Secretary of State of Maryland v. Joseph H. Munson Co.*, 467 U.S. 947, 104 S.Ct. 2839, 81 L.Ed.2d 786 (1984). " 'It is settled by a long line of recent decisions of this Court that an ordinance which ... makes the peaceful enjoyment of freedoms which the Constitution guarantees contingent upon the uncontrolled will of an official--as by requiring a permit or license which may be granted or withheld in the discretion of such official--is an unconstitutional censorship or prior restraint upon the enjoyment of those freedoms.' " *Shuttlesworth, supra*, 394 U.S., at 151, 89 S.Ct., at 938-39 (quoting *Staub, supra*, 355 U.S., at 322, 78 S.Ct. at 282).

493 U.S. at 225-26, 110 S.Ct. at 605.

The Bridgeview Ordinance gives the Village Trustees unbridled discretion to deny a special use permit to operate an adult business. It contains no limits upon that discretion whatsoever, allowing the Trustees to vote against allowing a business to operate for any reason they wish, including those which the Constitution forbids. A reading of the proceedings before the Village Board at the time the special use permit was denied to Plaintiff shows that the reasons for denying the special use permit were not legitimate. They were aimed at the content of the speech the Trustees thought might occur at Plaintiff's premises if it were allowed to operate an adult business. This is simply not permitted. *Schultz v. City of Cumberland, supra.*

The government has no right to restrict expression based solely on its like or dislike of a specific message. <u>Police Department of City of Chicago v Mosely</u>, 408 U.S. 92, 95-96; 92 S.Ct. 2286; 33 L.Ed.2d 212 (1972), wherein the Supreme Court stated,

6

> But, above all else, the First Amendment means that the government has no power to restrict expression because of its message, its ideas, its subject matter, or its content. To permit the continued building of our politics and culture, and to assure self-fulfillment for each individual, our people are guaranteed the right to express any thought, free from government censorship. The essence of this forbidden censorship is content control. Any restriction on expressive activity because of its content would completely undercut 'profound national commitment to the principles that debate on public issues should be uninhibited, robust and wide open.' Necessarily then, under the equal protection clause, not to mention the First Amendment itself, government may not grant the use of a forum to people whose 'views it finds acceptable, but deny use to those wishing to express less favored or more controversial views.'

"Sex and obscenity are not synonymous. . . . The portrayal of sex, e.g., in art, literature, and scientific works is not itself sufficient reason to deny the constitutional protection of freedom of speech and press. Sex, a great and mysterious motive force in human life, has indisputably been a subject of absorbing interest to mankind throughout the ages; it is one of the vital problems of human interest and public concern." Roth v United States, 354 U.S. 476, 1 L.Ed.2d 1498; 77 S.Ct. 1304 (1957) at pg 487. See, also, Kingsley Pictures Corp v Regents, 360 U.S. 684 (1959).

Thus, in Schad v Borough of Mount Ephraim, 452 U.S. 61, 65, 68 L.Ed.2d 671; 101 S.Ct. 2176 (1981), the Supreme Court recognized: 'Entertainment, as well as political and ideological speech, is protected; motion pictures, programs broadcasted by radio and television, and live entertainment such as musical and dramatic works, fall within the First Amendment Guarantee. Sexual expression which may be perceived to be indecent to some, but is not obscene is protected by the First Amendment. Sable Communications of Calif v Federal Communications Com, 492 U.S. 115, 126; 106 L.Ed.2d 93; 109 S.Ct. 28-29 (1990).

The primary purpose of the guarantee of the freedom of press is to prevent prior restraints on publication. Near v Minnesota, 283 U.S. 697, 713; 75 L.Ed. 1357, 51 S.Ct. 625 (1931). The parameters of the prior restraint doctrine were further explained in New York Times v U.S., 403 U.S. 713; 29 L.Ed.2d 822, 91 S.Ct. 2140 (1970), where the Court observed

7

that "because any prior restraint on speech is presumptively invalid under the First Amendment, the government bore a heavy burden of showing justification for the restraints. Id. at 714. Any system of prior restraints of expression comes to this court bearing a heavy presumption against its constitutional validity.

Joseph Burstyn, Inc. v Wilson, 343 U.S. 495, 503 (1952). And, "under the Fourteenth Amendment, a state is not free to adopt whatever procedures it pleases for dealing with obscenity . . . without regard to the possible consequences for constitutionally protected speech. (Marcus v Search Warrant, 367 U.S. 717, 731 6 L.Ed.2d 1127 81 S.Ct. 1708.) And, allowing the government "unbridled discretion" in determining whether to grant or deny a permit or license to engage in constitutionally protected activities renders the regulation invalid and the failure to place time limits on a decision maker is a form of unbridled discretion. Freedman v Maryland, 380 U.S. 51, 56-57; 85 S.Ct. 734, 14 L.Ed.2d 649 (1965). A system of prior restraints avoids constitutional infirmity when it takes place under procedural safeguards designed to obviate the dangers of a censorship system. Freedman, 380 U.S. at 58.

The minimal constitutional parameters for licensing laws effecting businesses are well established.

> First, any restraint imposed in advance of final judicial determination must be for a brief period of time and must be limited to preserving the status quo . . . Second, expeditious judicial review must be available.

East Brooks Books, Inc. v City of Memphis, 48 F3d 220, 224 (6th Cir. 1995) (cert denied ____ U. S. ____, 116 S.Ct. 277; 133 L.Ed.2d 198 (1995), citing Freedman, 380 U.S. at 59-60. Prompt judicial review is necessary in the event that a license is erroneously denied. FW/PBS v Dallas, 493 U.S. 215, 226; 110 S.Ct. 596; 107 L.Ed.2d. 603 (1990).

In the present case, under the Bridgeview Village Licensing and Zoning Ordinances, an

8

individual cannot engage in the sale of constitutionally presumptively protected material unless and until it obtains a license from the Village to operate.

## IV. THE CONSTITUTIONAL PARAMETERS OF ADULT ZONING ORDINANCES

The Supreme Court has specifically addressed the constitutional parameters of zoning of "adult" businesses in Renton v Playtime Theatres, Inc., 475 U.S. 41, 106 S.Ct. 925; 89 L.Ed.2d. 29 (1986). That decision analyzed the ordinance at issue there, pursuant to the "content - neutral time, place or manner" analysis of intermediate scrutiny. This, however, is no such regulation.

At issue in Renton was a very simple ordinance that regulated the **location** of adult movie theatres so that they would not be in close proximity to certain "sensitive uses" (such as residential areas, churches, schools, etc.).

Since an adult business must apply for permission to operate, this makes the approval process "the equivalent of a license.

> As a form of prior restraint, licensing schemes commonly contain two defects: discretion and opportunity for delay. An ordinance that gives public officials the power to decide whether to permit expressive activities must contain precise and objective criteria on which they must make their decision; an ordinance that gives too much discretion to public officials is invalid. *Lady J Lingerie, Inc. v City of Jacksonville*, 176 F3d 1358, 1361 (11th Cir., 1999).

Simply put, licensing schemes which apply to businesses protected by the First Amendment may not vest "unbridled discretion" with a governmental official in determining whether to permit or deny expressive activity. City of Lakewood v Plain Dealer Publishing Co., 46 U.S. 750, 755-756; 108 S.Ct. 2138; 100 L.Ed.2d 771 (1988). The Seventh Circuit Court of Appeals and others, including the Illinois Supreme Court have held that zoning ordinances which only permit adult businesses to locate by special use permit are unconstitutional prior

restraints. In *Entertainment Concepts, Inc. III v. Maciejewski*, 631 F. 2d. 497 (7th Cir. 1980), it

was held:

> We doubt any special use scheme for regulation of adult movie theaters would be
> constitutionally valid because of the prior restraint involved. ... Moreover, even if
> the ordinance could be viewed as a means to regulate only the location if 'adult
> uses," the means chosen to attain this end are impermissible. The special use
> scheme fails the fourth test of O'Brien that any 'incidental restriction on ... First
> Amendment freedoms (be) no greater than is essential to the furtherance of the
> substantial governmental interest. We upheld the simple licensing requirement in
> Genusa as incidental to the enforcement of the distance restriction there. Issuance
> of a license (absent the inspection requirement struck down in Genusa) is
> automatic and occurred within a short time period. Although the village contends
> that the ordinance does not flatly prohibit adult movie theaters, the Westmont
> officials possess unbridled discretion to grant or deny a special use permit. In
> addition, the ordinance proscribes no time period at all for decisions. Instead of
> merely regulating location, the ordinance thus grants the Village officials the
> power to prohibit the operation of any adult movie theatre. *Entertainment
> Concepts*, 631 F. 2d at 504-505. (citations omitted)

The Illinois Supreme Court has similarly stated;

> We agree with the defendants that this provision impermissibly vests county
> officials with the power to discriminate on the basis of the content of the
> communication through selective enforcement. We can find no provisions in the
> ordinance setting standards or guidelines for the board of commissioners to
> follow in deciding whether to grant or deny special use permits. Moreover, even
> though adult uses may locate as of right in industrially zoned areas, the Supreme
> Court has condemned the vesting of totally discretionary power in the hands of
> officials to grant or deny permits or licenses needed to engage in protected
> activity. *County of Cook v. Renaissance Arcade & Bookstore*, 122 Ill 2d 123,
> 152; 533 NE 2d 73 (1988), citing *Shuttlesworth v. Birmingham*, 394 U.S. 147,
> 151; 22 L. Ed. 2d 162; 89 S. Ct. 935 (1969) (see also *County of Cook v. World
> Wide News Agency*, 98 Ill App 3d 1094; 424 NE 2d 1173 (1981).

Those decisions hardly stand alone. Virtually every court that has ever considered this

question has concluded that the special use permitting process is an unconstitutional prior

restraint on speech. See *Freedman v. Maryland*, 380 U.S. 51; 13 L. Ed. 2d 603; 85 S. Ct. 734

(1965), *FW/PBS v. Dallas*, 493 U.S. 215, 107 L. Ed 2d 603, 110 S. Ct. 596 (1990) *Lady J.*

10

*Lingerie v. Jacksonville*, 176 F. 3d 1358 (11ᵗʰ Cir. 1999), *Tool Box, Inc. v. Ogden City*, 316 F. 3d 1167 (10ᵗʰ Cir. 2003); *Odyssey of T.C. v. Blair Township*, 1996 U.S. Dist. Lexis 4803 (WD MI. 1996); *Little v. Greenfield*, 575 F. Supp. 656 (ED WI. 1983); *Dia v. City of Toledo*, 937 F. Supp. 673 (ND Ohio, 1996) and cases cited therein.

The primary reason that these types of ordinances are held to be unconstitutional is because they permit city officials to exercise unbridled discretion in the granting or denial of a permit or allow too much time to decide whether to permit the speech, thus chilling expression. This case is no different.

## V. THE ORDINANCE IS BEING UNCONSTITUTIONALLY APPLIED TO PLAINTIFF

We would note also that the failure to place time limits on a decision maker is also a form of unbridled discretion. Freedman v Maryland, supra, 56-57. When a licensing scheme creates the possibility of delay, a facial constitutional challenge is appropriate because "every application of the [law] create[s] an impermissible risk of suppression of ideas. FW/PBS, Inc. v City of Dallas, 493 U.S. 215, 224 (1990), quoting City Council of Los Angeles v Tax Payers for Vincent, 466 U.S. 789, 798, n. 15 (1984).

A system of prior restraint avoids constitutional infirmity only if it takes place under procedural safeguards designed to obviate the dangers of a censorship system. Freedman, 380 at 58.

Minimal constitutional parameters for licensing laws effecting First Amendment businesses are well established. First, any prior restraint imposed in advance of a final judicial determination must be for only a brief period of time and must be limited to preserving the status quo. . . . Second, expeditious judicial review must be available. East Brooks Books, 48 F3d

220, 224 (1995), citing Freedman, 380 U.S. at 59-60. Prompt judicial review is necessary in the event that a license is erroneously denied. FW/PBS, 493 U.S. at 228.

This aspect of the ordinance makes it invalid as well. However, not much need be said about this failing of the Ordinance at this point in this case because the denial of the special use permit to Plaintiff was for content-based reasons which are impermissible. As the Court of Appeals has observed, in some instances, it is more appropriate to show that the scheme is being applied unconstitutionally than showing its facial invalidity. *Thomas v. Chicago Park District,* 227 F 3d 921 (7th Cir 2000), affirmed 122 S Ct 775, 534 US 1051, 151 L Ed 2d 783, 151 L Ed 2d 783 (2002). Here, Plaintiff meets all of the tests required to show unconstitutional application of the Bridgeview ordinance against it.

The transcript of the proceedings before the Village Board of Trustees shows most graphically that the special use permit sought by Plaintiff was denied because the Trustees disagreed with the form of entertainment was to be offered and the content of the materials which were to be sold there. This is the quintessential content-based governmental decision which the First Amendment was specifically designed to prohibit.

The ordinance contains none of the limitations upon action of the Bridgeview officials found to be sufficient in *Graff v City of Chicago,* 9 F 3d 1309 (7th Cir 1993). The Bridgeview zoning ordinance has been applied by defendants so as to prevent any operation of an adult business. That is clearly an unconstitutional application. Whatever other failings of the ordinance, they pale in the face of Bridgeview's use of that ordinance to zone all adult businesses out of operation within Bridgeview. That is clearly unconstitutional. *Schad v Borough of Mount Ephraim* 101 S Ct 2176, 452 US 61, 68 L Ed 2d 671 (1981).

12

## VI. THE THREATENED INJURY TO THE PLAINTIFF OUTWEIGHS ANY POSSIBLE HARM THAT THE INJUNCTIVE RELIEF MAY INFLICT UPON THE DEFENDANTS.

There is no dispute as to the place that First Amendment rights exist in the hierarchy of fundamental constitutional protections. As the Supreme Court has noted, the freedoms as enumerated in the First Amendment are protections upon which all other constitutional rights depend. Palco v Connecticut, 302 U.S. 319, 326-27; 58 S.Ct. 149; 82 L.Ed. 289 (1937). See, also, Boner at 1560-61 (First Amendments paramount position among all constitutional rights . . . ). In addition, because Plaintiff is entitled to raise First Amendment constitutional protections not only of itself, but of all those who may be affected by the Ordinance, the freedom of expression issues involved here go far beyond the named litigants and extend to the citizens of the Village of Bridgeview.

In contrast, the risk to the Defendants is dependent upon what they assert to be the interest or interest sought to be protected afforded by the zoning ordinance. Whatever those interests may be, they cannot outweigh the fundamental constitutional rights of the Plaintiff which are at stake.

## VII. THE GRANTING OF AN INJUNCTION WILL NOT DISSERVE THE PUBLIC INTEREST BUT WOULD RATHER SERVE IT.

[S]ince it may be assumed that the Constitution is the ultimate expression of the public interest, it is safe to say that the public interest would be served - - not disserved - - by the issuance of a Preliminary Injunction here. Llewelyn v Oakland County Pros., 402 F.Supp. 1379, 1393 (E.D. Mich 1975). It "is always in the public interest to prevent the violation of a party's constitutional rights." G & V Lounge, Inc. 23 F3d at 1079 (emphasis added) citing Gannett Co., v DePasquale, 443 U.S. 368, 383; 99 S.Ct. 2898; 61 L.Ed.2d. 608 (1979) and Planned Parenthood Ass'n. v City of Cincinnati, 822 F2d 1390, 1400 (6th Cir. 1987).

Regardless of the sliding scale, however, this Plaintiff has a strong likelihood of success on the merits of the constitutional challenges for the reasons set forth above.

## CONCLUSION

Plaintiff has shown a strong and substantial likelihood of success on the merits of its claim. The Bridgeview Village Zoning Ordinance is nothing less than a prior restraint on free speech and free expression. Moreover, the powers granted to the Village Board in that zoning ordinance have been used in an unconstitutional manner to prevent the operation of an adult business within the Village, for the one and only reason that the defendants don't want "that kind of business" within its borders.

The Bridgeview Ordinances are a clear abuse of constitutionally permissible zoning ordinances and have been applied to Plaintiff in an unconstitutional manner. This Court should enter an Order enjoining the Defendants from enforcing the Village of Bridgeview Zoning Ordinance, in such a manner as to deny Plaintiff a special use permit, and enter its Order allowing Plaintiff to operate the kind of adult business it wishes to operate.

Respectfully submitted,

WAYNE B. GIAMPIETRO
One of the Attorneys for Plaintiff

Wayne B. Giampietro, Bar No.0947776
Stephen G. Daday, Bar No 3127015
Michael G. Aretos, Bar No.6200044
Of Counsel:
Stitt, Klein, Daday, Aretos & Giampietro
121 S. Wilke Road, Suite 500
Arlington Heights, IL 60005
(847) 590-8700; (847) 590-9825 fax

14

# *See Case File For Exhibits*